IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

PACIFICORP, dba PACIFIC,
POWER & LIGHT,

                    Appellant,

      v.

NORTH PACIFIC CANNERS &
PACKERS, INC.; HERMISTON
FOOD, LLC; NPCP QUINCEY, LLC,

                    Appellees.

_____

Civ. No. 6:21-cv-00863-AA

**OPINION & ORDER**

AIKEN, District Judge.

This case comes before the Court on a Notice of Appeal filed by Appellant PacifiCorp from a decision of the United States Bankruptcy Court for the District of Oregon issued in *In re North Pacific Canners & Packers, Inc. et al.*, Case No. 19-62584-pcm11, 628 B.R. 337 (Bankr. D. Or. 2021). ECF No. 1. For the reasons set forth below, the decision of the bankruptcy court is AFFIRMED and this appeal is DISMISSED.

## BACKGROUND

Appellee North Pacific Canners & Packers Inc. ("NORPAC") filed a Chapter 11 bankruptcy petition on August 22, 2019. ER6. ECF No. 11-1. Appellant PacifiCorp,

doing business as Pacific Power & Light, is a public utility that supplied electricity to NORPAC at multiple locations prior NORPAC's bankruptcy petition.  *Id.*  A total of seven utility meters were used in connection with PacifiCorp's supply of electricity to NORPAC.  *Id.*

PacifiCorp filed an unsecured proof of claim in the amount of $502,230.73 for electricity provided to NORPAC prepetition.  ER6.  PacifiCorp asserted that $206,009.81 of the total claim should receive priority treatment under 11 U.S.C. § 507(a)(2), which provides that an administrative expense claim allowed under 11 U.S.C. § 503(b) is entitled to priority treatment.  *Id.*  Specifically, PacifiCorp asserted that $206,009.81 of the claim arose under 11 U.S.C. § 503(b)(9), which allows for priority for claims for the value of goods received by a debtor within 20 days before the petition date if the goods were sold to the debtor in the ordinary course of the debtor's business.  ER6-ER7.

NORPAC filed an objection to PacifiCorp's claim, arguing that the claim was not entitled to priority treatment because electricity is not "goods" within the meaning of § 503(b)(9) and that the claim should be reclassified as a nonpriority, general unsecured claim.  ER7.

The bankruptcy court held an evidentiary hearing on January 27, 2021 at which expert witnesses provided testimony via declaration and each witness was available for cross-examination, although neither party undertook cross examination. ER7.

On May 11, 2021, the bankruptcy court issued an opinion in which it sustained NORPAC's objection and concluded that PacifiCorp's claim was not entitled to priority treatment as "goods" under § 503(b)(9).  ER5-ER19.  An order granting the objection was entered on May 18, 2021.  ER2-ER4.  This appeal followed.

## LEGAL STANDARD

District courts have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges.  28 U.S.C. § 158(a)(1).  A district court reviews a bankruptcy court's decision by applying the same standard of review used by circuit courts when reviewing district court decisions.  *In re Greene*, 583 F.3d 614, 618 (9th Cir. 2009).  The district court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law de novo.  *In re Harmon*, 250 F.3d 1240, 1245 (9th Cir. 2001).

## DISCUSSION

The core of this dispute is whether electricity qualifies as "goods" under 11 U.S.C. § 503(b)(9).  If electricity is "goods," then PacifiCorp's claim would be entitled to priority treatment but if electricity is not "goods" then PacifiCorp's claim would be a non-priority unsecured claim.

### I.    Standard of Review

As a preliminary matter, the Court must resolve the proper standard of review for this appeal.  As noted, district courts review bankruptcy court findings of fact for clear error and conclusions of law de novo.  *In re Harmon*, 250 F.3d at 1245.  In this case, PacifiCorp asserts that the bankruptcy court's decision is fundamentally a

conclusion of law and so should be reviewed de novo.  NORPAC, however, asserts that this appeal implicates mixed questions of law and fact and that the factual conclusions predominate and should be reviewed for clear error.

The district court in *In re Great Atlantic & Pacific Tea Co., Inc.*, 538 B.R. 666 (S.D.N.Y. 2015) confronted a nearly identical appeal and concluded that it was faced with a mixed question of law and fact.  *Id.* at 670.  The court found that "the question of whether electricity is a good under Section 503(b)(9) is a question of law," but that "[s]ubsidiary questions, such as whether electricity is moving at the time it is metered are questions of fact."  *Id.*  Ultimately, however, a "Bankruptcy Court's determination that a payment is or is not a proper administrative expense presents a question of law."  *Id.*  The Court concurs and concludes that the proper standard of review for this appeal is de novo.

## II.    Priority Claims Under 11 U.S.C. §§ 507(a) and 503(b)

The Bankruptcy Code provides that "administrative expenses allowed under section 503(b)" of Chapter 11 have second priority status in receiving distributions from the bankruptcy estate.  11 U.S.C. § 507(a)(2).  In pertinent part, § 503(b) provides that, after notice and a hearing, administrative expenses should be allowed for "the value of any good received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business."  11 U.S.C. § 503(b)(9).

Priority under § 507 "is to be strictly construed" because "preferential treatment of a class of creditors is in order only when clearly authorized by Congress."

*In re Lorber Indus. of Cal.*, 373 B.R. 663, 667-68 (9th Cir. B.A.P. 2007) (internal quotation marks and citation omitted).  "The burden of proving an administrative expense claim is on the claimant."  *In re BCE West, L.P.*, 319 F.3d 1166, 1172 (9th Cir. 2003) (internal quotation marks and citation omitted).

## III.    The Bankruptcy Court Decision

In reaching its decision, the bankruptcy court held an evidentiary hearing and considered the expert opinions of Dr. Howard Scott, retained by NORPAC, and Dr. Shawn Kolitch, retained by PacifiCorp.

Dr. Scott's report states that electricity was supplied to NORPAC via AC circuits in which "electricity was a form of energy transferred via waves carried over the electric utility's wires," and that these waves "have no mass, nor do they have a solid form," but "merely transfer energy."  ER 111.  Dr. Scott reported that there "is no commercially available method for storing electricity in the form that exists in a power grid," and so "[o]nce electricity passes through a revenue meter, it can only be consumed by the device that closed the circuit, permitting electricity to flow through the meter."  ER112.  Of note, Dr. Scott reported that "[e]lectricity travels near the speed of light, and electricity meters operate at a much slower speed than that," and "though all widely used forms of electric meters do measure the amount of electricity that passed through them, they only do so *after* the electricity was consumed."  *Id.*

Dr. Kolitch reported that electricity is identified at the time it passes through the electric meter and that, at that time, the electricity is still movable.  ER 217.  Dr. Kolitch opined that it was possible to store electricity after it passed through the

meter as in the case of batteries.  RR 223-24.  In his rebuttal report, Dr. Kolitch acknowledged that when electricity is stored in batteries it is stored in a different form, although it is "recoverable in its original form."  ER 259.  Dr. Kolitch opined that "AC current is theoretically movable even without transformation into another form," but that doing so "is not particularly practical, and is therefore not (to my knowledge) commonly done."  ER 259-60.

In considering PacfiCorp's claim and NORPAC's objection, the bankruptcy court determined that the proper definition of "goods," which is not defined in the statute, is derived from the Uniform Commercial Code ("UCC").  ER11.  This definition encompasses all things "which are movable at the time of identification to the contract for sale."  ER12 (quoting U.C.C. § 2-105(1)).

The bankruptcy court noted that Dr. Scott "testified, without contradiction, that because electricity moves at almost the speed of light, all widely used forms of electric meters are incapable of registering and displaying the amount of electricity used before that electricity is consumed."  ER12-13.  PacifiCorp contended that electricity was "identified" when it passed through the meter.  ER13.  The bankruptcy court rejected that argument, noting that "[i]dentification of goods occurs when existing goods are designated, or agreed upon, as the goods to which the contract refers," and concluded that something "cannot be identified until it is capable of perception."  ER14 (internal quotation marks and citation omitted).  Applied to the facts of this case, the bankruptcy court found that identification of electricity "is impossible until, at the earliest, the quantity of electricity delivered is registered and

displayed on the meter," and by the time the recording occurs, the electricity has been consumed and is no longer "movable." ER15.

The bankruptcy court rejected an argument by PacifiCorp that electricity would qualify as goods because there was a "theoretical possibility" that AC electricity could be stored "in a manner similar to water and natural gas, without transformation into another form of energy." ER16. The bankruptcy court noted that PacifiCorp's own expert admitted that, while theoretically possible, the storage of electrical energy "in the form of AC current is not particularly practical," and was not commonly done. ER 17 (internal quotation marks and citation omitted). Furthermore, there was no evidence that NORPAC had stored the electricity it received from PacifiCorp in any form. *Id.* "Instead all indications are that [NORPAC] consumed the electricity supplied to it by PacifiCorp in the way consumers usually do—immediately." *Id.*

The bankruptcy court also observed that, even if it were to accept that electricity is identified at the time it passed through the meter, it would still be "inclined to believe that electricity does not qualify as goods because it is not movable at that time." ER17. The bankruptcy court accepted that electricity "moves" but that the term is not synonymous with "movable." ER17-18. "The Earth moves and is moving. So does the wind; as does the Empire State Building in a strong wind. But the Earth and the wind are not 'movable' because no one could conceivably move them." ER 18. In the specific case of electricity, the bankruptcy court relied on Dr. Scott's opinion when it concluded that "electricity is not movable when it passes

through a meter because it can only be consumed by the device that closed the circuit and caused the electricity to flow through the meter."  ER17 (internal quotation marks and citations omitted).

In sum, the bankruptcy court found that, in light of the strict construction of priorities under §§ 507 and 503(b)(9) and the Supreme Court's caution that "'any doubt concerning the appropriate characterization' of a claim 'is best resolved in accord with the Bankruptcy Code's equal distribution aim,'" that any doubt about whether electricity is a "good" should be resolved against granting priority to the creditor.  ER18 (quoting *Howard Delivery Serv., Inc. Zurich Am. Ins. Co.*, 547 U.S. 651, 668 (2006)).  As such, the bankruptcy court concluded that PacifiCorp had not met its burden of showing that its claim was entitled priority treatment.

## IV.    Analysis

There are two essential questions at the core of this appeal.  The first concerns what definition should be applied to the term "goods" in § 503(b)(9).  The bankruptcy court utilized a definition of "goods" taken from the UCC, noting that this was the preferred definition of the majority of courts that have considered the question.  *See In re Great Atl. & Pac. Tea Co.*, 538 B.R. at 672; *see also In re Escalera* 563 B.R. at 349-50 ("In the absence of a definition of 'goods' in the Bankruptcy Code, all bankruptcy courts construing Section 503(b)(9) have turned to the UCC.").  Although PacifiCorp argues that the bankruptcy court erred by not considering other possible definitions of the term, the court in *In re Escalera* observed that the UCC definition of "goods" was in place prior to the enactment of § 503(b)(9); that it has been adopted

in some form by 49 states; and that "the UCC definition of 'goods' is widely accepted and used." *In re Escalera*, 563 B.R. at 350.  The Court therefore concludes, as did the bankruptcy court, that the UCC definition of "goods" is properly applied in the context of § 503(b)(9).[1]

Under the model UCC definition used by the bankruptcy court, "goods" means "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale[.]"  U.C.C. § 2-105(1).

The second question is, having resolved the definition of "goods" whether electricity meets the standard.  As the court observed in *In re Escalera*, the unanimity of bankruptcy courts concerning the proper definition falls apart when the courts are called upon to apply that definition to electricity.  *In re Escalera*, 563 B.R. at 354 (observing that "despite this uniformity in initial analytic approach, such bankruptcy courts have reached starkly contradictory results concerning whether electrical energy is 'goods.'").

Here, the bankruptcy court concurred with the district court in *In re Great Atl. & Pac. Tea Co.*, which concluded that electricity is not "identified" until it has been measured by the meter.  *In re Great Atl. & Pac. Tea Co.*, 528 B.R. at 673.  Electricity moves through the wire at near the speed of light and so by the time it is recorded by the meter, the electricity has already been consumed by the end user.  *Id.*  As a result,

---

[1] The bankruptcy court in *In re Escalera* considered both alternative definitions of "goods" and the question of whether electricity was considered a "good" in contexts outside of bankruptcy.  563 B.R. 336 348-50, 360-70 (Bankr. D. Colo. 2017).  This effort, while admirably thorough, did not alter the *Escalera* court's conclusion that the UCC definition was properly applied in the bankruptcy context. *Id.* at 369-70.

the electricity "is not movable at the time of identification because it has already been used." *Id.* This conclusion is consistent with the expert report of Dr. Scott.

In doing so, the bankruptcy court expressly rejected the contrary conclusion of *In re Escalera*, which held that "goods" was a broad and encompassing term in common usage and that giving it a narrower meaning with respect to electricity in bankruptcy court would "upset established legal meanings across many areas of law." *In re Escalera*, 563 B.R. at 369-70.[2]

The Court, however, finds the reasoning of *In re Great Atlantic & Pacific Tea Co.* persuasive, as did the bankruptcy court. Electricity is not "identified" until it has been recorded by the meter and, because of the speed that electricity moves through the wire and the comparative slowness of the meter, the electricity has been consumed by the time that identification occurs. The electricity is not, therefore, movable at the time of identification.[3]

The Court also concurs with the bankruptcy court's decision to read § 503(b)(9) narrowly. As the Supreme Court observed: "Any doubt concerning the appropriate characterization . . . is best resolved in accord with the Bankruptcy Code's equal distribution aim." *Howard Delivery Serv.*, 547 U.S. at 668; *see also In re Consolidated Freightways Corp. of Delaware*, 564 F.3d 1161, 1167 n.14 (holding "that the scope of priorities should be strictly construed because preferential treatment of a class of

---

[2] Of note, the court in *In re Escalera* heard only the unrebutted testimony of Dr. Kolitch, 563 B.R. at 346, where this Court and the bankrucptcy court had the benefit of Dr. Scott's expert testimony in addition to that of Dr. Kolitch.

[3] Because the Court concludes that electricity is not movable at the time of identification, it is not necessary for the Court to reach the bankruptcy court's alternative conclusion that electricity is not "movable" in a more general sense.

creditors is in order only when clearly authorized by Congress." (internal quotation marks and citation omitted)).  Consistent with this principle, the bankruptcy court found that PacifiCorp has not met its burden of demonstrating that its claim was entitled to priority and this Court reaches the same conclusion.

In sum, the Court concludes that electricity does not qualify as a "good" for purposes of. § 503(b)(9) and so PacifiCorp's claim is not entitled to priority under § 507(a)(2).  The decision of the bankruptcy court is therefore AFFIRMED.

## CONCLUSION

For the reasons set forth above, the decision of the bankruptcy court is AFFIRMED and this appeal is DISMISSED.

It is so ORDERED and DATED this _____3rd_____ day of February 2023.


 /s/Ann Aiken _____
ANN AIKEN
United States District Judge